UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



Fakhrul Huda,

          Plaintiff,

    –v–

New York City Health and Hospitals Corporation, *et al.*,

          Defendants.

19-cv-11556 (AJN)

MEMORANDUM OPINION & ORDER

ALISON J. NATHAN, District Judge:

    Fakhrul Huda asserts eighteen claims against his employer—New York City Health and Hospitals Corporation ("NYCHHC")—and individual supervisors. The gravamen of his claims is that NYCHHC discriminated against him because of his age, Pakistani origin, and Muslim faith and retaliated against him for resisting this discrimination and engaging in other speech activities. The Defendants move to dismiss.

    In a thorough and thoughtful recent opinion, Judge Furman dismissed nearly identical claims brought by one of Huda's colleagues concerning conduct during the same time frame at the same hospital. *See Farooq v. New York City Health & Hosps. Corp.*, No. 19-cv-6294 (JMF), 2020 WL 5018387 (S.D.N.Y. Aug. 25, 2020). The Court agrees with Judge Furman's analysis and concludes that most of Huda's claims fail to state a claim for the same reasons. However, the Court concludes that Huda's allegations—which describe a closer temporal proximity between protected conduct and retaliation than those of his colleague—are enough to support his claims for Title VII and ADEA retaliation at the pleading stage. The Court thus grants in part and denies in part the motion to dismiss.

I.      **Background**

For purposes of this motion, the Court takes as true all factual allegations in Huda's complaint, Dkt. No. 1, and draws all reasonable inferences in his favor.

Huda is a 60-year-old, Pakistani-born clinical pharmacist at the Harlem Hospital Center, a hospital within the NYCHHC system.  Compl. ¶ 10.  He is a Sunni Muslim.  *Id.*  He became an Intravenous/Total Parenteral Nutrition pharmacist in 2001 and was promoted to the position of a Level II pharmacist in 2008.  *Id.* ¶ 21.

Until the middle of 2018, Huda received excellent performance evaluations and had not been disciplined during his twenty-two years at Harlem Hospital Center.  *Id.* ¶¶ 21, 49.  However, he started having problems once Hinnah Farooqi assumed her position as the Associate Executive Director of the hospital, a position in which she reports to Chief Executive Officer Eboné Carrington.  Farooqi is not of Pakistani origin and is not a Sunni Muslim.  *Id.* ¶ 15.  Huda and his colleagues began receiving more negative performance reviews around that time, and he received a rating of "satisfactory" in June 2018.  *Id.* ¶¶ 49–50.  When he inquired about the rating, he was informed that higher management had requested his evaluation be lowered.  *Id.* ¶ 51.

Since Farooqi became the Associate Executive Director of the hospital, several younger, non-Pakistani pharmacists have been promoted to become Level III supervising pharmacists over more senior pharmacists of Pakistani origin.  *Id.* ¶ 42.  Huda applied for a Level III position on at least two occasions.  *Id.* ¶ 45.  In August 2018, another, non-Pakistani pharmacist who was younger and less experienced than Huda was promoted to a Level III position over Huda.  *Id.* ¶ 48.  Huda also was not returned to his position at the IV pharmacy following a training course in the main pharmacy near the end of 2018.  *Id.* ¶¶ 57–58.  Huda and others of his colleagues

who speak English as a second language "feel bullied and intimidated by Dr. Farooqi." *Id.* ¶ 53. Huda also alleges that Farooqi has denied older Pakistani pharmacists religious accommodation requests, but does not identify any such requests or allege that he was personally affected. *Id.* ¶ 54.

In January 2019, seven older Pakistani pharmacists at the hospital, including Huda, filed complaints with NYCHHC's Equal Opportunity Office alleging discrimination based on national origin, religion, and age. *Id.* ¶ 40. On April 30, 2019, counsel for several older Pakistani pharmacists at the hospital sent a letter to Carrington voicing concerns about Farooqi. *Id.* ¶ 64. Carrington took no action. *Id.* ¶ 65. Huda and nine other pharmacists filed an EEOC charge on July 1, 2019. *Id.* ¶ 5.

Huda also had several run-ins with Farooqi during the summer of 2019. On one occasion in June, Huda and Farooqi got into an argument about whether New York law permitted pharmacy technicians to compound medications. *Id.* ¶¶ 67–68. Following the argument, Huda posted a copy of a New York statutory provision he believed was relevant on the pharmacy notice board. *Id.* ¶ 70. Huda was called into a meeting with human resources staff and told not to post information on the notice board. *Id.* ¶ 75. Sometime the next month, Huda posted a flier for a union election on the notice board and was again told not to use the notice board. *Id.* ¶¶ 76–78.

Huda was reprimanded again in July 2009 after he informed a nurse he could not fill a medication request until the prescribing physician entered the details into the hospital's computer system. *Id.* ¶¶ 79–85. Farooqi told Huda that he had been rude to the nurse and physician, and Huda later received an email instructing him to attend a counseling session. *Id.* ¶¶ 85–86. Farooqi attended that session and complained about Huda's other conduct. *Id.* ¶ 89.

On October 15, 2019, Huda was called out of the pharmacy. *Id.* ¶ 24. Two hospital police officers escorted Huda out of the hospital. *Id.* ¶¶ 25–27. The next day, Huda received a pre-hearing suspension letter from the Office of Labor Relations suspending him with pay. *Id.* ¶ 28. Days later, he received another pre-hearing suspension letter informing him his suspension would be without pay. *Id.* ¶ 32. A third letter dated November 1, 2019, informed him that he would receive back pay for the period from October 16 through October 30, but that his suspension would be without pay effective October 31, 2019. *Id.* ¶ 34. That letter included a specification of disciplinary charges against Huda dated October 31, 2019. It charged him with kissing a colleague on the cheek, inappropriately touching her buttocks and lower back, and calling her "Baby." *Id.* ¶ 35. Apart from the brief period before his back pay was reinstated, Huda does not allege that the suspension failed to conform to the disciplinary procedures set out in his union's collective bargaining agreement ("CBA").[1] Huda has not worked at the hospital since October 16, 2019. *Id.* ¶ 36.

Two other pharmacists out of the ten who filed EEOC charges have also faced discipline. *Id.* ¶ 94. Umer Farooq was suspended in June 2019. *Id.* ¶¶ 96–97. As Farooq alleged in his civil complaint, his disciplinary charges included making threatening statements to and about Farooqi. Dkt. No. 31-1, ¶ 95. Judge Furman dismissed his complaint this past August. *See Farooq*, 2020 WL 5018387. Saleem Ahmad was suspended in September 2019. A motion to dismiss his civil complaint remains under submission with Judge Engelmayer. *See* Compl. ¶ 139; *Ahmad v. New York City Health and Hospitals Corporation*, No. 20-cv-675 (S.D.N.Y.).

---

[1] The Court takes judicial notice of the CBA, Dkt. No. 22-2, which is a matter of public record. *See Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986); *see, e.g.*, *Richardson v. New York City Bd. of Educ.*, 711 F. App'x 11, 13 (2d Cir. 2017) (taking judicial notice of CBA on motion to dismiss).

4

## II. Legal Standard

"To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 715 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When determining whether a complaint states a claim, a court accepts as true all allegations in the complaint and draws all reasonable inferences in favor of the non-moving party. *Id.* A defendant may raise the affirmative defense that a claim is time-barred in a motion to dismiss if that defense appears on the face of the complaint. *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998); *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989).

## III. Discussion

The Court divides Huda's claims into six general categories for discussion. First, he alleges violations of his procedural and substantive due process rights related to his employment at NYCHHC. Second, he alleges violations of his free speech rights. Third, he alleges that NYCHHC may be liable for his federal constitutional claims under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Fourth, he alleges discrimination based on his age, national origin, and religion. Fifth, he alleges retaliation for reporting discrimination. Sixth, he alleges violations of New York civil service and administrative laws. The Court concludes that Huda states plausible claims only for his retaliation causes of action.

A. **Due Process**

A violation of due process requires a constitutionally protected interest. *Richardson v. Belcher*, 404 U.S. 78, 80 (1971). "[I]t is well established that the state-law property interest of government employees who may only be discharged for cause, such as tenured teachers, is a constitutionally protected property interest for purposes of the Fourteenth Amendment." *O'Connor v. Pierson*, 426 F.3d 187, 196 (2d Cir. 2005). However, the Court agrees with Judge Furman's analysis that Second Circuit precedent does not recognize suspension with pay as a violation of any property interest in public employment. *See Farooq*, 2020 WL 5018387, at *4. "[N]o court has held that an employee on fully paid leave has been deprived of a property right merely by virtue of being relieved of his job duties." *O'Connor*, 426 F.3d at 199.

Because Huda's CBA and New York Civil Service Law § 75(3) permit suspension without pay only once "charges have been preferred" against an employee, Huda's due process claim centers on the period before charges were formally specified against him on October 31, 2019. Opp. Br., Dkt. No. 30, at 6 & n.5; *see* Dkt. No. 22-2. He contends the notice he received on October 18 stating that his suspension would be without pay violated his due process, even though NYCHHC superseded that notice and granted him back pay only days later. The Court does not agree. Huda was not suspended without pay. An employee who initially receives an erroneous notice of suspension without pay but has that pay promptly restored has not been deprived of a constitutionally protected interest. *See Farooq*, 2020 WL 5018387, at *4. In substance, his suspension complied with the CBA and § 75(3). This sort of brief, bureaucratic error does not offend the constitution. Huda also argues that suspension may affect his ability to maintain his pharmacist's license, but these allegations do not appear in his complaint, and in

6

any event cannot displace Second Circuit precedent that suspension alone does not infringe on any constitutionally protected interest.

Huda also does not adequately plead a "stigma-plus" claim. He alleges neither an "adverse action clearly restricting the [his] liberty" nor that the charges against him were publicly disseminated. *Velez v. Levy*, 401 F.3d 75, 88 (2d Cir. 2005); *see also Walker v. Daines*, No. 08-cv-4861 (JGLB), 2009 WL 2182387, at *10 (E.D.N.Y. July 21, 2009) ("Absent publication or dissemination, a stigma-plus claim fails." (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 547 & n.13 (1985))). Placing stigmatizing charges in a "*discharged* employee's personnel file" may qualify as public dissemination because those statements "are likely to be disclosed to prospective employers." *Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 631 (2d Cir. 1996) (emphasis added). However, an employee does not suffer a due process deprivation simply because accusations of misconduct "h[ang] over his head during [disciplinary] proceedings." *Loudermill*, 470 U.S. at 547 n. 13. The Constitution allows public employers to investigate alleged misconduct—including stigmatizing misconduct—even if those allegations ultimately prove false.

The Court thus concludes that Huda fails to plausibly allege a violation of his due process rights.

### B. Free Speech

A public employer's regulation of employee speech is governed by the framework set forth in *Garcetti v. Ceballos*, 547 U.S. 410 (2006). The Court must first decide whether the employee's speech was speech as a citizen on a matter of public concern. *Id.* at 417. If not, the speech is unprotected, and the employee has no claim against the employer for disciplinary action taken in response. *Id.* A public employer's regulation of protected speech, on the other

hand, is subject to balancing under *Pickering v. Board of Education*, 391 U.S. 563 (1968). Regulation of that speech is not per se unlawful. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421. Huda agrees that his claims under the New York State Constitution are "governed by the same [principles] as their federal counterparts." Opp. Br. at 15.

Huda does not plausibly allege any imposition on his protected speech or retaliation for protected speech activities. He contends that he spoke as a citizen when he posted a New York statute relevant to his argument with Farooqi on the pharmacy notice board. His allegations belie that contention. Indeed, just before Huda posted the statute on the notice board, Farooqi asked him for his professional opinion—within his job as a pharmacist—on whether pharmacy technicians could compound medications. Compl. ¶¶ 67–75. That subject is plainly relevant to his job, and responding to a supervisor's inquiry was plainly pursuant to his duties. As in *Garcetti*, his statements to his supervisor and colleagues about his views on matters related to his employment were statements as an employee, not a citizen. *Garcetti*, 547 U.S. at 420–21; *see also Farooq*, 2020 WL 5018387, at *5 (concluding that a pharmacist's email to colleagues complaining of failures to follow medication management standards was speech pursuant to the pharmacist's official duties).

Speech related to union organizing is surely protected. *Clue v. Johnson*, 179 F.3d 57, 60 (2d Cir. 1999). However, Huda does not plausibly allege any adverse action in retaliation for any union-related speech. His sole allegation related to speech about a union was that he posted a flier and was told that he should not use the pharmacy notice board. *See* Compl. ¶¶ 76–78; *see*

8

*also id.* ¶ 75 (describing a previous instance on which HR personnel told Huda not to use the notice board for other purposes). He draws no connection between this incident and his suspension months later. These sparse allegations fall far short of those necessary to raise a plausible inference of retaliation for his speech.

The Court thus concludes that Huda does not plausibly allege a violation of his free speech rights.

### C. *Monell*

Because Huda does not plausibly allege a constitutional violation, he fails to state a claim for municipal liability under *Monell*. *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). The Court also concludes that, even had he alleged an underlying constitutional violation, Huda fails to allege facts supporting municipal liability. First, Huda does not plausibly allege a municipal policy under a single-decisionmaker theory. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). Huda does not allege that Carrington or Farooqi had final policymaking authority with respect to NYCHHC's disciplinary policies. *See id.* at 481 (plurality opinion). That they may have had hiring or firing authority is not enough; otherwise, any adverse employment action by a manager would subject a municipality to *Monell* liability. Huda also fails to plausibly allege that NYCHHC maintained a policy of "disciplining older, Pakistani Muslim pharmacists while flouting established protections under the CBA and the NYCHHC Rules regarding pre-hearing suspensions." Opp. Br. at 21. As discussed above, apart from an erroneous initial suspension notice—which NYCHHC corrected only days later—NYCHHC did not depart from the required procedures for pre-hearing suspensions.

The Court thus concludes that Huda has not plausibly alleged a claim for municipal liability against NYCHHC.

**D.     Discrimination**

The Court next turns to Huda's discrimination claims. The Court agrees with Judge Furman's conclusion on essentially identical facts that Huda fails to plausibly allege a prima facie case of discrimination necessary to support a claim under Title VII or the ADEA.[2] *See Farooq*, 2020 WL 5018387, at *6; *see also Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). A prima facie case under Title VII or the ADEA requires a plaintiff to show that "(1) he was a member of a protected class; (2) he was competent to perform the job in question, or was performing the job duties satisfactorily; (3) he suffered an adverse employment action; and (4) the action occurred under circumstances that give rise to an inference of discrimination." *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010) (per curiam). Huda agrees that his state and federal discrimination claims are subject to the same standard. *See* Opp. Br. at 15 & n.11. "To survive a motion to dismiss under all of the provisions at issue in this case, the facts alleged must provide 'at least minimal support for the proposition that the employer was motivated by discriminatory intent.'" *Farooq*, 2020 WL 5018387, at *6 (quoting *Littlejohn*, 795 F.3d at 311).

Huda alleges only three materially adverse employment actions that affected him personally. First, he alleges that he was passed over for a Level III pharmacist position in favor of a younger, non-Pakistani pharmacist in August 2018. Compl. ¶¶ 45–48. Second, he alleges that at the end of 2018, he remained in the main pharmacy rather than returning to the IV pharmacy. *Id.* ¶¶ 57–59. Third, he alleges that he was suspended in October 2019. *Id.* ¶¶ 24–38. "An adverse employment action is a materially adverse change in the terms and conditions of employment." *Weeks v. New York State (Div. of Parole)*, 273 F.3d 76, 85 (2d Cir. 2001) (internal quotation marks omitted). Less favorable performance reviews did not materially

---

[2] Huda cannot sustain a claim under 42 U.S.C. § 1981, because that statute provides no remedy against state actors. *See Duplan v. City of New York*, 888 F.3d 612, 619 (2d Cir. 2018).

change Huda's terms and conditions of employment and thus are not actionable discrimination. *See Farooq*, 2020 WL 5018387, at *6–7.

Discrimination claims related to the first of these actions is time-barred. Claims for discrete acts of discrimination or retaliation accrue the day they occur. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). The Supreme Court has rejected a "continuing violation" theory of claim accrual for claims alleging discrete acts of discrimination, even if they form part of a pattern of "serial violations." *Id.* at 110, 114. Thus, because Huda did not file an EEOC charge until July 1, 2019—more than "three hundred days after the alleged unlawful employment practice occurred"—any claim related to the August 2018 promotion is time-barred. 42 U.S.C. § 2000e-5(e)(1); s*ee* Compl. ¶ 5. Huda does not defend the timeliness of any claims for conduct before September 4, 2018, in his brief.

Huda's allegations related to remaining in the main pharmacy after his training program are too sparse to plausibly support an inference of discriminatory intent. He does not allege that he was similarly situated to the unnamed "younger, less experienced" pharmacists who he alleges "took his place" in the IV pharmacy. Compl. ¶ 59; *see Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999). Nor does he provide any explanation of why he would be expected to return to the IV pharmacy after training program in the main pharmacy or why this would constitute a demotion. He does not mention this incident in his discussion of his discrimination claims in his brief.

Nothing links Huda's suspension to any protected characteristics either. He does not "allege that similarly situated employees who engaged in conduct that bears a 'reasonably close resemblance of the facts and circumstances of the plaintiff's case' were not similarly disciplined. *Farooq*, 2020 WL 5018387, at *7 (cleaned up) (quoting *Graham v. Long Island R.R.,* 230 F.3d

11

34, 40 (2d Cir. 2000)). He does not allege any statements by supervisors related to his age, national origin, or religion. Absent any allegations of facts showing a discriminatory motive, Huda does not make out a prima facie case of discrimination.

Huda seeks to salvage these claims by alleging "a pattern and practice of discrimination." Opp. Br. at 16 (citing *Chin v. Port Authority of N.Y. and N.J.*, 685 F.3d 135, 148–49 (2d Cir. 2012)). In particular, he points to two other cases by Pakistani pharmacists against HHC (of which one—*Farooq*—has now terminated in dismissal). But *Chin* stands for precisely the opposite proposition. The Second Circuit held there that "the pattern-or-practice method of proof is *not* available to nonclass, private plaintiffs." *Chin*, 685 F.3d at 150 (emphasis added). Thus, an individual plaintiff pursuing discrimination claims cannot substitute allegations of "the existence of a discriminatory policy" for allegations of "all elements of a prima facie case of discrimination." *Id.* at 149. Because he has not plausibly alleged the elements of a prima facie case of discrimination, he fails to state a disparate impact claim.

The Court also concludes that Huda has not plausibly alleged a hostile work environment. "To prevail on a hostile work environment claim, a plaintiff must show that his or her 'workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Farooq*, 2020 WL 5018387, at *8 (quoting *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 175 (2d Cir. 2012)). To determine whether a hostile work environment exists, courts must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "Conduct that is not severe or pervasive enough to create an objectively hostile or

abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Id.* at 21.

Huda's allegations of a hostile work environment are entirely conclusory. *See* Compl. ¶ 52 ("Dr. Farooqi has also created a hostile, disparaging, and demeaning work environment for older Pakistani pharmacists."); *id.* ¶ 53 ("Huda and his colleagues, many of whom speak English as a second language, feel bullied and intimidated by Dr. Farooqi."). He cites no statements whatsoever directed to his age, national origin, or religion. He cites no statements whatsoever that could possibly be seen as abusive. He alleges in conclusory fashion that Dr. Farooqi denied religious accommodation requests for Pakistani pharmacists, but provides no examples. *Id.* ¶ 54. These allegations fall well short of the sort of severe and pervasive conduct required for a claim of a hostile work environment.

The Court thus concludes that Huda has not plausibly alleged actionable discrimination on the basis of any protected characteristic. For the same reasons, and because he alleges no facts suggesting a conspiracy, it also concludes he has not plausibly alleged a conspiracy to interfere with his civil rights by depriving him of equal protection on the basis of race.

### E. Retaliation

To make out a prima facie case of retaliation, "an employee must show (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005) (internal quotation marks omitted). "Title VII's antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment. Rather, a plaintiff may recover for retaliation by showing that a reasonable

employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Davis-Garett v. Urb. Outfitters, Inc.*, 921 F.3d 30, 43 (2d Cir. 2019) (cleaned up). "[A] close temporal relationship between a plaintiff's participation in protected activity and an employer's adverse actions can be sufficient to establish causation." *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002).

The Court concludes that Huda's allegations are sufficient—barely—to plausibly support a causal link between his protected activity and his suspension at the pleading stage. "Though [the Second Circuit] has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, [it has] previously held that five months is not too long to find the causal relationship." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) (citing *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty.*, 252 F.3d 545, 555 (2d Cir. 2001)). A "few months" is usually close enough. *See Treglia*, 313 F.3d at 720. Huda alleges a number of instances of protected conduct throughout 2019, including an EEO complaint in January, a letter to Carrington in April, and an EEOC charge in July. *See* Compl. ¶¶ 5, 40, 64–65. His suspension followed about three and a half months between the last and most serious of these activities. *See id.* ¶¶ 5, 24. Three and a half months is a bit on the long side to support an inference of causation. But the Court also considers the extent of his protected activity and the prior instances in which Huda was disciplined for seemingly minor infractions following earlier complaints of discrimination. *See id.* ¶¶ 67–75, 79–92. Taken together, the Court concludes that it is enough at the pleading stage.

Huda's allegation that Farooqi participated in (and seemingly instigated) a prior disciplinary counseling session related to his spat with the nurse suggests that Farooqi had at

least some ability to influence disciplinary decisions. *See id.* ¶¶ 86–89. Though the Defendants contend in their brief that the leadership of Harlem Hospital Center has no control over the Office of Labor Relations, and thus no control over employee discipline, the Court cannot draw that inference from Huda's complaint alone, and so cannot consider it on a motion to dismiss. *See Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000).

Of course, temporal proximity alone will not be enough to support Huda's claim on summary judgment. *See, e.g.*, *Tuccio Dev., Inc. v. Miller*, 423 F. App'x 26, 27 (2d Cir. 2011) (holding that a two-month gap between protected activity and an adverse employment action, without further evidence of causation, was not enough to withstand summary judgment). And on summary judgment, the other two steps of the burden-shifting analysis will come into play. *See Jute*, 420 F.3d at 173. At this stage, however, Huda has plausibly alleged retaliation for his complaints of discrimination.

Huda concedes that Title VII and the ADEA Title VII do not impose individual liability. *See* Opp. Br. at 19; *see also Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012). Thus, Huda's retaliation claims survive only against NYCHHC.

### F. New York Administrative Laws

Finally, Huda asserts claims under New York Civil Service Law § 75-b and New York City Administrative Code § 12-113. As discussed above, Huda does not plausibly allege that his suspension violated the procedures required by New York law or his CBA.

New York Civil Service Law § 75-b allows for civil actions only by employees whose discipline and dismissal is not governed by arbitration provisions in a CBA. § 75-b(3)(c); *see Verdi v. City of New York*, 306 F. Supp. 3d 532, 549 (S.D.N.Y. 2018). If an employee's discipline and dismissal is governed by a bargained-for grievance procedure, § 75-b is available

solely as a defense in disciplinary proceeding.  *See* § 75-b(3)(a)–(b).  Huda's discipline and dismissal is governed by such procedures under his CBA, and thus he cannot state a claim under § 75-b.  *See* Dkt. No. 22-2.

New York City Administrative Code § 12-113, to the extent it creates a private cause of action, also does not apply.  Huda has not plausibly alleged a causal nexus between any adverse employment action and the narrow types of reporting contemplated by the statute.  The Court thus concludes that Huda fails to state a claim under either of these statutes.

## Conclusion

For the foregoing reasons, the Court GRANTS in part and DENIES in part the motion to dismiss (Dkt. No. 20).  The Court dismisses Huda's first, second, third, fourth, fifth, sixth, seventh, ninth, tenth, eleventh, twelfth, thirteenth, fifteenth, seventeenth, and eighteenth causes of action with prejudice.  The Court also dismisses with prejudice all claims against the individual defendants.  The Court declines to dismiss Huda's eighth, fourteenth, and sixteenth causes of action against NYCHHC for retaliation under state and federal law.  The Court will set a status conference by separate order.

This resolves Docket Number 20.

SO ORDERED.

Dated: March 26, 2021
       New York, New York

ALISON J. NATHAN
United States District Judge